UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDDIE BROMWICH,<br><br>Defendant. | 3:24-CR-30016-ECS<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING IN PART AND RESERVING IN PART MOTION TO SUPPRESS |

The United States charged the defendant, Eddie Reece Bromwich, a non-Indian, with two counts of forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer and one count of assault resulting in serious bodily injury. All these charges arise from a traffic stop on a Bureau of Indian Affairs ("BIA") highway on the Lower Brule Indian Reservation. Bromwich moved to suppress "from use at trial all evidence obtained" during the traffic stop because the officers allegedly violated his right to be free from unreasonable searches and seizures. Doc. 35. Magistrate Judge Mark A. Moreno held a suppression hearing on December 11, 2024, during which he heard testimony from two witnesses, BIA Special Agent Gerald Dillon and Fely Goodface, Bromwich's significant other. The Court also received three video exhibits. Docs. 52 and 53. Judge Moreno issued a Report and Recommendation ("R&R") recommending Bromwich's motion be denied in part and reserved in part. Doc. 55. Bromwich timely objected to Judge Moreno's R&R. Doc. 58.

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which states that "[a] judge of the [district] court shall make a de novo

1

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge "may accept, reject, or modify, in whole or in part, the [magistrate judge's] findings or recommendations." Id.; Fed. R. Crim. P. 59(b)(3). Having conducted a de novo review, this Court adopts the Report and Recommendation as modified and supplemented below.

I. Discussion

    A. Factual Objections

Bromwich first objects to five specific factual findings or omissions. Doc. 58 at 3–4. This Court address each objection in turn.

*Objection One.* Bromwich objects to the R&R's use of "wafting" in the following statement: "Abruptly, Dillon asks if Bromwich has any marijuana in the car—in his suppression hearing testimony, Dillon described a smell of burnt marijuana *wafting* from the vehicle as prompting the sudden question." Doc. 55 at 2 (emphasis added). Bromwich argues that Dillon's testimony did not describe the odor as "wafting" from the vehicle. Doc. 58 at 3. Dillon's exact testimony was "I could detect the odor of burnt marijuana *coming from* the vehicle." Doc. 54 at 9 (emphasis added). The R&R's use of the vivid verb "wafting" in lieu of "coming from" does not distort Dillon's testimony. The term wafting, as used in the R&R, is the present participle of the verb waft, which is defined as "[t]o pass through the air or through space; to float upon, come or go with the wind or breeze."[1] When viewed in context, "wafting" and "coming from" do not convey opposing ideas. Both phrases tell the reader that an individual standing outside the vehicle could smell marijuana odor originating from inside the vehicle. Using a different, and

---

[1] Waft, Oxford English Dictionary, https://www.oed.com/dictionary/waft_v1?tab=meaning_and_use#15189574 (last visited Jan. 23, 2025).

2

arguably more descriptive word, did not alter the Court's analysis or outcome. See United States v. LaGrange, No. 18-CR-90, 2019 WL 585348, at *3 (N.D. Iowa Feb. 13, 2019) (overruling objection to R&R not using the exact words of a memo's title to describe the document). Because the R&R's use of "wafting" does not mischaracterize Dillon's testimony, Bromwich's objection to its use is overruled.

Bromwich further contends that Dillon's testimony about smelling "burnt" marijuana was not credible because Dillon acknowledged on cross-examination that he never mentioned smelling burnt marijuana during the traffic stop. Doc. 58 at 3; Doc. 54 at 21. In short, Bromwich argues that Dillon's testimony is not credible because it included a detail that he did not share during the traffic stop. To be sure, Dillon did not specify what medium of marijuana he smelled during the traffic stop, whether burnt or raw; he simply asked Bromwich if there was marijuana in his car. But the distinction between smelling burnt marijuana or raw marijuana is insignificant. In either case, Dillon smelled marijuana, and Bromwich admitted possessing it. He later acknowledged that Dillon could likely smell it. See Doc. 58 at 3 ("[I]t is certainly possible that Office [sic] Dillon smelled raw marijuana."). It is the odor of marijuana, regardless of its form, that led Dillon to suspect that Bromwich possessed a federally prohibited controlled substance.

Dillon's testimony specifying that he smelled burnt marijuana does not undermine his credibility for two reasons. First, Judge Moreno observed Dillon testify and found him to be credible. Doc. 55 at 8. A magistrate judge's credibility determination based on a witness's live testimony is entitled to some deference. United States v. Lockett, 393 F.3d 834, 837–38 (8th Cir. 2005) (stating that "magistrate's finding that the officer's testimony was believable is deserving of deference"); see also United States v. Martin, 28 F.3d 742, 745–46 (8th Cir. 1994) (magistrate

determination of witness credibility is "virtually unreviewable on appeal" (quoting United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992))); United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995) (giving weight to magistrate judge's credibility determination when magistrate judge specifically found one witness more credible than the other); United States v. Rank, No. 18-CR-30013–RAL, 2018 WL 3062911, at *1 (D.S.D. June 21, 2018) (deferring to Judge Moreno's decision to credit witness testimony). The record also supports Judge Moreno's finding of credibility. See United States v. Gibbs, 421 F.3d 352, 357 (5th Cir. 2005) (explaining that "deference to the magistrate's credibility determinations is appropriate when they are supported by the record").

Second, the odor of marijuana in any form creates "probable cause" to search for drugs. United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020); see also United States v. Winters, 221 F.3d 1039, 1042 (8th Cir. 2000) (smell of raw marijuana created probable cause to search car for drugs); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (odor of burnt marijuana gave officer probable cause to search vehicle for drugs). Bromwich is not objecting to Dillon's testimony that he smelled marijuana; he merely objects to the form of marijuana Dillon testified to having smelled. Because this Court finds Dillon's testimony credible, and there is no dispute that Dillon smelled marijuana in one form or another, Bromwich's objection to Dillon having smelled burnt marijuana is overruled.

*Objection Two.* Bromwich next objects to the R&R's statement that Dillon "believ[ed] he may be dealing with an impaired driver." Doc. 55 at 3. He contends that Dillon's testimony suspecting Bromwich of driving while under the influence ("DUI") of marijuana is not credible because Dillon mentioned the DUI theory for the first time at the suppression hearing. As

4

explained above, this Court finds Dillon's testimony credible. Dillon's failure to vocalize his suspicion during the traffic stop does not make his testimony untruthful.

Dillon credibly testified to having smelled burnt marijuana. The smell of burnt versus raw marijuana triggers concerns about operating a vehicle while under the influence of drugs. This concern is heightened when the vehicle's driver admits to committing a traffic offense and possessing a federally controlled psychoactive substance. Part of Dillon's DUI investigation included searching Bromwich's person for the marijuana package to determine whether it was in its original packaging or not. As Dillon explained, this information was important to communicate with the county sheriff, the individual ultimately responsible for investigating and arresting a non-Indian in Indian country for state law violations.

And this Court's conclusion would not change even if it sustained Bromwich's second objection. Bromwich admitted to both speeding and possessing a drug that remains illegal under federal law. As a federal law enforcement officer charged with enforcing federal law, 25 U.S.C. § 2803(3)(D)(i)(I), Dillon had authority to detain Bromwich, or at the very least, confiscate the marijuana. This objection is therefore overruled.

*Objection Three*. Bromwich's third objection challenges the R&R's summary of events detailing the officer's use of non-lethal force. He argues the R&R's background section inaccurately describes BIA Officer Lawrence Flute's taser shot as the first use of non-lethal force and altogether omits when Dillon used his taser to drive stun Bromwich after tackling him to the ground. This objection has merit. Dillon testified on cross-examination that non-lethal force was first used when he drive-stunned Bromwich with a taser. Doc. 54 at 34. Accordingly, the second full paragraph on page 4 of the R&R should read as follows:

> Chaos ensues. Flute draws his taser. Bromwich is hollering. Goodface is out of the vehicle screaming and begins recording with her phone. Dillon is roaring at

5

> Bromwich to get on the ground while hovering over him. **Dillon drive stuns him with a taser.** Bromwich stays on his knees. Dillon backsteps from the kneeling Bromwich. Flute fires **his taser**, hitting Bromwich who howls in pain and collapses.

Doc. 55 at 4 (internal citation omitted).

*Objection Four*. Bromwich's fourth factual objection raises a similar issue. He argues the R&R's discussion on excessive force is "incomplete and inaccurate" because it incorrectly stated, "[t]he officers did not tase Bromwich while he remained on the ground." Doc. 55 at 14. Thus, page 14 of the R&R should be amended to read:

> Bromwich jerked away. Only then did the officers tackle him. The three grappled for 35 seconds, **during which Dillon drive stunned Bromwich while** ~~interspersed with Dillon~~ yelling at least 7 times to get on the ground[.] **Flute tased him only after he continued to resist.** ~~before Flute tased Bromwich. The officers did not tase Bromwich while he remained on the ground; instead, they directed him to turn around and place his hands behind his back.~~ Only when Bromwich tried to stand up did Flute fire his taser again. The ~~third~~ **fourth** tasing is more of the same, Bromwich remaining noncompliant even after ~~three~~ **four** taser warnings. Dillon did not use pepper spray until Bromwich, who had been tased ~~three~~ **four** times at that point and remained uncooperative, ran to his car. And though Dillon had removed the keys from the car, he could not be sure whether a spare set of keys—or a weapon—were hidden in the vehicle. Once Bromwich quit physically resisting, the officers similarly stopped.

Doc. 55 at 14 (internal citations omitted).

*Objection Five*. Bromwich's last factual objection contends that no evidence supports the following statement from the R&R: "[Bromwich] tries to roll up the window *and make to the driver side*." Doc. 58 at 4. This objection is sustained. Neither Dillon's testimony nor the video exhibits show Bromwich "make to the driver's side." Therefore, page 4 of the R&R shall be amended to read:

> Dillon belts "taser" thrice in rapid succession before firing; the barbs hit; Bromwich falls but is back up quickly. Bromwich breaks for the passenger-side of his vehicle, gets in, and slams the door. He tries to roll up the window ~~and make to the driver side.~~ Dillon pepper sprays him **from the driver's side of the vehicle**. More screaming. The passenger-side door flings open. Bromwich bursts from the car. Dillon and Flute pincer in.

6

Doc. 55 at 4.

   B. **Legal Objections**

Bromwich also raised two legal objections.

*Independent Crime.* The R&R concluded that even if Bromwich's initial detention were unlawful, his subsequent struggle with law enforcement constituted a new, distinct crime not subject to the exclusionary rule. Doc. 55 at 7–8. In the Eighth Circuit, "resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." United States v. Sledge, 460 F.3d 963, 966 (8th Cir. 2006) (quoting United States v. Schmidt, 403 F.3d 1009, 1016 (8th Cir. 2005)); see also United States v. Pickens, 58 F.4th 983, 988 (8th Cir. 2023) (explaining that "[r]esistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest"). And "[w]hen a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." United States v. Hunt, 372 F.3d 1010, 1012 (8th Cir. 2004).

Bromwich, however, disagrees that his conduct constituted an independent crime. Doc. 58 at 4–5. He asserts that resistance to an illegal seizure provides independent grounds for a subsequent arrest "only if the resistance itself would provide a reasonable officer with probable cause to make an arrest for resisting." Id. (citing United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995)). Here, he argues that a reasonable officer would not have probable cause to make an arrest because there is not enough evidence to prove his resistance was forcible. Bromwich rests his objection on a statement from the R&R explaining that "[t]he videos leave open whether Bromwich forcefully assaulted, resisted, [or] impeded the officers—an issue for the jury to determine at trial." Doc. 55 at 15. He claims that "[a]n open question as to whether

7

[he] forcefully resisted does not establish probable cause, as probable cause would require a reasonable ground for belief of guilt." Doc. 58 at 5.

This argument is unpersuasive. Whether Bromwich acted forcefully is an essential element of the charged offenses. See 18 U.S.C. § 111(a)(1).[2] An outstanding issue-of-fact for the jury regarding an essential element of the crimes charged is independent of a probable cause determination. The United States "Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 515 U.S. 506, 522–23 (1995). Though "a [court] may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt," Sullivan v. Louisiana, 508 U.S. 275, 278 (1993), it cannot do so on a suppression motion. A motion to suppress is not a proper vehicle to contest a defendant's guilt. See United States v. Rose, No. 05-101, 2005 U.S. Dist. LEXIS 10213, at *3–4 (E.D. Pa. May 25, 2005). A suppression motion "does not challenge the criminality of a defendant's conduct. Rather, it challenges the admissibility of the evidence that proves one or more elements of the defendant's criminal conduct." United States v. Jones, 431 F. Supp. 2d 594, 599 (E.D. Va. 2006). If Bromwich believes the United States' evidence cannot establish guilt for forcefully assaulting, resisting, or impeding a federal officer, he must move for judgment of acquittal. Fed. R. Crim. P. 29(a). But the proper time to make a Rule 29 motion is "[a]fter the government closes its evidence or after the close of all the evidence." Id.

---

[2] The Eighth Circuit Model Criminal Jury Instruction for 18 U.S.C. § 111(a) provides:
> "Forcibly" means by use of force. Physical force is sufficient but actual physical contact is not required. You may also find that a person who, in fact, has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon such person acts forcibly. In such case, the threat must be a present one.

Eighth Cir. Manual of Model Crim. Jury Instr. 161 (2023 ed.).

8

As for the existence of probable cause "to initiate a prosecution for a serious crime," that is for the grand jury to decide. Kaley v. United States, 571 U.S. 320, 328 (2014). "[T]he grand jury's core competence and traditional function [is] to determine whether there is probable cause to think the defendant committed [the] crime" charged. Id. at 331 n.9. Here a grand jury found sufficient probable cause to indict Bromwich for forcefully assaulting, resisting, or impeding a federal officer. Doc. 1. "[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' . . . 'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." Kaley, 571 U.S. at 328 (first alteration in original) (quoting Gerstein v. Pugh, 420 U.S. 103, 1127 n.19 (1975)). Bromwich's objection to his conduct constituting an independent crime is therefore overruled.

*Lawful Detention*. Bromwich next objects to the conclusion that the traffic stop and his initial detention were lawful. Bromwich's objections here are twofold. First, he argues that driving while under the influence being an assimilated crime is irrelevant because Dillon's testimony that he suspected Bromwich may have been driving while under the influence of marijuana was not credible. This Court, however, has already overruled Bromwich's objections to Dillon's credibility. It is therefore relevant that driving under the influence is an assimilated crime; it goes directly to the BIA officer's authority, indeed duty, to detain and investigate a possible DUI offense.

"A BIA officer has a statutory duty to arrest a suspect who commits an offense in Indian country in the officer's presence." United States v. Billadeau, 275 F.3d 692, 694 (8th Cir. 2001) (citing 25 U.S.C. § 2803(3)(A)). And the Assimilated Crimes Act ("ACA") makes driving on an Indian reservation while under the influence of drugs a federal offense. See 18 U.S.C. § 13. "It is the law of this Circuit that . . . drunk driving and speeding on an Indian reservation are,

9

assimilated" crimes. Billadeau, 275 F.3d at 694; see also United States v. Thunder Hawk, 127 F.3d 705, 707–09 (8th Cir. 1997) (South Dakota's law against DUI, when committed on an Indian reservation, is assimilated under the ACA); United States v. McMillan, 820 F.2d 251, 254 (8th Cir. 1987) (South Dakota's offenses for DUI, failing to stop at an intersection, and speeding are all assimilated crimes). Because BIA officers, such as Officers Dillon and Flute, have a statutory duty to arrest individuals who commit a crime in Indian country in the officer's presence, it is relevant that the ACA assimilates South Dakota's law against impaired driving when committed on an Indian reservation. Bromwich's objection on this point is overruled.

Second, Bromwich objects to the conclusion that federal law prohibiting the possession of marijuana justified his initial detention. In essence, he argues the Consolidated Appropriations Act of 2023 ("CAA"), Pub. L. No. 117-328, § 531, 136 Stat. 4561 (2022), made it unlawful to detain him because the Act restricts the Department of Justice from using funds appropriated under the Act to prosecute the possession of marijuana. Doc. 58 at 6. Courts have interpreted the CAA "to mean that 'the DOJ may not spend funds to bring prosecutions if doing so prevents a state from giving practical effect to its medical marijuana laws.'" United States v. Doolin, 93 F.4th 1094, 1095–96 (8th Cir. 2024) (quoting United States v. Bilodeau, 24 F.4th 705, 713 (1st Cir. 2022)). But Bromwich's argument overlooks not only the important distinction between the BIA—which falls within the Department of the Interior—and the Department of Justice, but also the difference between arresting authority and prosecutorial discretion.

Dillon had statutory authority to investigate and detain Bromwich for possession of marijuana. See 21 U.S.C. § 844[3]; 25 U.S.C. § 2803(3)(D)(i)(I)(aa); see also Billadeau, 275 F.3d at 694 (BIA officers have "a statutory duty to arrest" for violations of 25 U.S.C. § 2803(3)). And nothing within the CAA restricts his authority to make arrests. Although the CAA may shield against prosecution, the discretion on whether to levy charges is the province of the prosecutor, not the arresting officer. "[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Moreover, "while an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the [arrestee] or to assess the credibility of unverified claims of justification before making an arrest.'" Cornett v. Brown, No. 04-CV-0754, 2006 U.S. Dist. LEXIS 22415, at *23 (E.D.N.Y. Mar. 30, 2006) (quoting Jocks v. Tavernier, 316 F.3d 128, 135–36 (2d Cir. 2003)). Bromwich's objection is thus overruled.

Finally, Bromwich objects to the R&R's reliance on federal law to justify the legality of his initial detention because "Dillon and Flute believed they were enforcing tribal law." Doc. 58 at 6. While that may be true, their colloquy with Bromwich did not lack reference to marijuana being illegal under federal law:

DILLON:   We don't have [medical marijuana] on the rez here, so . . .

---

[3] Marijuana possession remains illegal under federal law. "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . . ." 21 U.S.C. § 844(a). Though § 844(a) exempts certain prescribed medicines, marijuana is not one of them. See United States v. Blanding, No. 21-CR-00156, 2022 WL 92593, at *2 (D. Conn. Jan. 6, 2022). The Controlled Substances Act classifies marijuana as a Schedule 1 Controlled Substance, and § 844(a)'s "prescription exception does not cover Schedule 1 drugs." Id. (quoting United States v. Arizaga, No. 16-CR-89, 2016 WL 7974826, at *2 (S.D.N.Y. Dec. 22, 2016)).

| | |
|---|---|
| BROMWICH: | Yeah I don't — there's no law against it, so . . . [Goodface is] a council member so she knows. |
| DILLON: | So you know that [marijuana] is still illegal for Lower Brule, right? |
| BROMWICH: | No it's not illegal on the reservation . . . there's no law against it. It was decriminalized federally — |
| DILLON: | Actually it's not. |
| BROMWICH: | Yeah it is. On the reservation it's decriminalized . . . |
| DILLON: | But federally? |
| BROMWICH: | . . . I can prove it to you. |
| DILLON: | No. It's not. |

Exhibit 1 at 3:52–4:15. Even if Dillon and Flute subjectively believed they were only enforcing tribal law, probable cause for an arrest is an objective standard. Klingler v. United States, 409 F.2d 299, 304 (8th Cir. 1969). An "officer's mistaken statement of grounds" for an arrest does not make it unlawful when facts known to the officer objectively meet the standard of probable cause. Id. at 305. The practical non-technical standards of probable cause "give fair leeway for enforcing the law in the community's protection." Id. at 304 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

> The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law, . . . to always be able to immediately state with particularity the exact grounds on which he is exercising his authority. We believe that if the officer had probable cause to arrest and otherwise validly performed the arrest, he is not under the circumstances of this case required to immediately recognize and accurately broadcast the exact grounds for this action or suffer the arrest to come under constitutional criticism.

Id. at 306 (quoting McNeely v. United States, 353 F.2d 913, 918 (8th Cir. 1965)). Though it is "good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." Devenpeck v. Alford, 543 U.S. 146, 155 (2004). Thus, Dillon's reference to both tribal and federal law did not make

Bromwich's detention unconstitutional. Bromwich's admission to possessing marijuana gave objective justification for Dillon to detain Bromwich under federal law. See 21 U.S.C. § 844; 25 U.S.C. § 2803(3)(D)(i)(I)(aa).

Even if Dillon and Flute were acting under tribal law, "[t]he Supreme Court has recognized that tribal law enforcement authorities possess 'traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands,' and therefore have 'the power to restrain those who disturb public order on the reservation, and if necessary to eject them.'" United States v. Terry, 400 F.3d 575, 579 (8th Cir. 2005) (quoting Duro v. Reina, 495 U.S. 676, 696–97 (1990)). "Because such power 'would be meaningless if tribal police were not empowered to investigate [the undesirable conduct], tribal police must have such power.'" United States v. Santistevan, 3:19-CR-30017-RAL, 2019 WL 1915791, at *2 (D.S.D. April 30, 2019) (quoting Terry, 400 F.3d at 579–80). Therefore, Dillon and Flute did not violate Bromwich's Fourth Amendment right to be free from unreasonable seizure because they had the authority to investigate Bromwich's drug possession and determine whether to eject him from the reservation.

## II. Conclusion

For the reasons explained above, it is

ORDERED that Defendant Eddie Bromwich's objections to the Report and Recommendation, Doc. 58, are sustained in part and overruled in part, and the Report and Recommendation on Defendant's Motion to Suppress, Doc. 55, is adopted, subject to the modifications discussed above. It is further

ORDERED that Defendant Eddie Bromwich's Motion to Suppress, Doc. 35, is denied in part and reserved in part.

13

DATED this 29 day of January, 2025.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE